Wendy Lindstrom (WL 2940)
Hanoch Sheps (HS 0414)
805 Third Avenue, 18th Fl.
New York, New York 10022
(646) 663-1860 (telephone)
(646) 663-1895 (facsimile)
wlindstrom@messner.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

| | |
|---|---|
| OLIVER SEARS, | : |
| | : |
| Plaintiff, | : CM/ECF |
| vs. | : Index No.: 1:16-cv-2143-VEC |
| | : |
| SOTHEBY'S INC., SOTHEBY'S ART SALES CORP., | : **COMPLAINT** |
| and SOTHEBY'S HOLDING, INC., | : |
| | : |
| Defendants. | : |

-------------------------------------------------------------------X

Oliver Sears (hereinafter "Sears" or "Plaintiff"), by its undersigned attorneys, Messner Reeves LLP, upon information and belief, for its Complaint against Sotheby's Inc., Sotheby's Art Sales Corp., and Sotheby's Holding, Inc. (referred to, collectively, as "Sotheby's" or "Defendants") alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages by Plaintiff, Oliver Sears, against the Sotheby's Defendants for destroying the value of a painting entitled *Brushy Elegy*, 1979, oil on paper, 58.42 x 73.66 (hereinafter referred to as the "Painting" or "*Brushy Elegy*"), an artwork created by the renowned artist, Robert Motherwell (1915-1991). As set forth in detail below, Defendants offered the Painting for sale at auction without the authority of its owner, Plaintiff. Adding insult to injury, Defendants placed an egregiously low estimated value so far below its actual value that they have destroyed the market for this rare and unique painting.

2. On or about September 1, 2011, the Oliver Sears Gallery in Ireland exhibited the Painting.

3. Motherwell was an influential artist of the late 20th Century whose work has been the subject of international exhibitions and extensive scholarly literature.

4. Defendants' unauthorized, negligent and willful offering for sale and false estimate of the Painting in their sale catalogue resulted in the constructive total loss of *Brushy Elegy* and Plaintiff's legally protected interest in *Brushy Elegy*.

## PARTIES

5. Plaintiff is domiciled in Ireland.

6. Sotheby's Inc. is a New York corporation with its principal place of business located at 1334 York Avenue, New York, New York.

7. Sotheby's Art Sales Corp. is a New York corporation with its principal place of business located at 1334 York Avenue, New York, New York.

8. Sotheby's Holding, Inc. is a New York corporation with its principal place of business located at 1334 York Avenue, New York, New York.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 due to diversity of the parties and because the amount in controversy exceeds $75,000.

10. The Court also has subject matter jurisdiction over this action because Plaintiff's Lanham Act claim arises under 15 U.S.C. § 1125(a)(1)(B).

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

## FACTUAL BACKGROUND

12. As a prominent member of the Abstract Expressionist artistic movement in the 1940's and 1950's, Motherwell counted amongst his contemporaries noted artists like Jackson Pollock, Mark Rothko and Willem de Kooning. Like his contemporaries, his artwork was informed by an early life already tainted by the Great Depression and later the traumatic events of World War II.

13. Motherwell built on the theme of regression and the events of the Spanish Civil war in a series of 150 monumental artworks he entitled his "Elegies to the Spanish Republic."

14. In or around 2012, *Brushy Elegy* was included in a "catalogue raisonné" entitled Robert Motherwell Paintings and Collages: A Catalogue Raisonné, 1941-1991.

15. A catalogue raisonné is regarded as a definitive catalogue of the works of a particular artist; inclusion of a painting in a catalogue raisonné serves to authenticate the work, while non-inclusion suggests that the work is not genuine. There is a direct relationship between value and inclusion in a catalogue raisonné – whereas a work that merits inclusion attains value as accepted by industry experts, a work that is excluded, rejected and/or or deemed inauthentic may lose all economic value and be deemed unsaleable. Many sophisticated art collectors rely on confirmation of authenticity of a work by prolific artists such as Motherwell prior to purchase.

16. On or around October 12, 2015, Defendants began advertising their November 12, 2015 Contemporary Day Sale in New York, (the "November Day Sale") via, *inter alia*, a printed catalogue, its website, and numerous other publications in both digital and print media.

17. Defendants' printed catalogues are often collector's items in their own right and their sales garner extraordinary media attention, as was the case in the sale of the Andy Warhol collection, Bunny Mellon, and portions of the Forbes collection of Fabergé.

18. Defendants' May and November sales are also amongst the most highly publicized auctions of the calendar year. Pre-auction sale estimates and auction results are relied on by the fine art market as indices of the depth, breadth and success of that market as well as the market for any given style of art or artist.

19. Sotheby's November 11 contemporary "evening sale" was to be followed by a "day sale" on November 12. A "day sale" is known in the auction industry to include lesser quality works as compared with the evening sales. Sotheby's own website states that the November Day Sale resulted in just over $98,000,000 in sales, whilst the evening sale commanded approximately $300,000,000 in sales, nearly three times the amount of the November Day Sale.

20. On or about October 25, 2015, Plaintiff notified Defendants of the unauthorized advertisement of Plaintiff's painting, *Brushy Elegy*, for sale at auction at the November Day Sale as Lot 152.

21. Plaintiff never intended to offer *Brushy Elegy* for sale at auction and never consigned *Brushy Elegy* to the Defendant for such purposes.

22. In fact, Plaintiff intended and did offer *Brushy Elegy* for private sale to the Bernard Jacobson Gallery, knowing that he could achieve a higher sales price in a private sale.

23. Defendants' November 12, 2015 sale catalogue (the "Sotheby's Catalogue") (both print and online versions) falsely indicated that the estimated sale price for *Brushy Elegy* was $100,000 to $150,000.

24. The Plaintiff did not agree and would never have agreed to include *Brushy Elegy* in the November Day Sale for $100,000 to $150,000.

25. Defendants knew that this valuation was wildly inaccurate as early as 2012 when Plaintiff sought an auction estimate from Defendants.

26. On or about May 25, 2012, Plaintiff sent Defendants a description of *Brushy Elegy*, along with an image, to obtain an opinion as to their expert opinion of what value they would place on *Brushy Elegy*.

27. Based solely on the image, Defendants provided an auction estimate of $15,000 to $20,000. Plaintiff unequivocally contested this erroneous valuation at that time citing a gross undervaluation, amongst other things, and thus refusing to consign *Brushy Elegy*.

28. On or around November 14, 2012, Plaintiff consigned *Brushy Elegy* for private sale to the Bernard Jacobson Gallery in London with a retail price of $500,000.

29. Upon information and belief, Defendants were aware of this consignment and valuation and/or should have discovered this fact in their due diligence prior to their unauthorized inclusion of the Painting in the Sotheby's Catalogue.

30. Because Sotheby's either knew or should have known that they grossly undervalued the work in 2012 and in light of the subsequent consignment by the Bernard Jacobson Gallery, the Sotheby's Catalogue represents an act of malice or reckless disregard for the truth of the statements therein vis-à-vis *Brushy Elegy*'s value.

31. Defendants nevertheless listed *Brushy Elegy* for sale, despite being unauthorized to do so. Moreover, Sotheby's never inspected the Painting and could not have as it never left the owner's possession in Ireland.

32. On or about November 23, 2015, Robert Delaney of the Bernard Jacobson Gallery, London wrote to the Plaintiff that *Brushy Elegy* "is a beautiful and special work which is why a poster was made of it during our first Robert Motherwell exhibition…is a highly recognizable image…[and] anyone interested in the Motherwell market would have taken note of it's [sic] presence in the [November Day Sale]."

33. Delaney further indicated in the same correspondence that but for Sotheby's valuation, $650,000 would be an appropriate retail price for *Brushy Elegy*. This reflects an appreciation in value from the retail value assigned to it by them three years earlier.

34. A certified fine art appraiser and trained art historian with extensive work in museums and auction houses, damage and loss appraisals concurs with the Bernard Jacobson assessment of the value of *Brushy Elegy* and retail price of $650,000.

35. Delaney specifically stated that Defendants' actions directly resulted in the Bernard Jacobson Gallery's reassessment of *Brushy Elegy's* value and its diminution in value.

36. Because the Defendants published the *Brushy Elegy* estimate in the globally disseminated Sotheby's Catalogue, the Bernard Jacobson Gallery rescinded its offer to have *Brushy Elegy* on consignment at the retail price of $650,000.

37. In the auction market, at least two events can effectively "burn" or critically devalue an artwork. A work can be burned if it is inexplicably removed from sale or fails to sell altogether. In the former, prospective buyers, dealers, appraisers and market analysts are left to make assumptions regarding the removal and often conclude that the artwork could be improperly valued, inauthentic, damaged, or even counterfeit.

38. On or about November 2, 2015, eight days after Plaintiff notified Defendants of the error, Defendants merely published an unqualified notice on its website that Lot 152 had been withdrawn from sale.

39. On November 6, Plaintiff's counsel further notified Defendants of the facts that form the basis of the subject Complaint and demanded that Defendants publish an official retraction of Lot 152 with a printed and electronic explanation of Defendants' grossly undervalued estimate. Plaintiff further demanded that Defendants pay Plaintiff $650,000 in damages.

40. On November 17, Defendants stated that they were not in a position to offer Plaintiff's work for sale or purchase it from Plaintiff for $650,000.

41. Defendants refused to officially retract the Sotheby's Catalogue entry, explain the gross underestimate in value, or offer a reason for removing *Brushy Elegy* from the November Day Sale – their refusal to do so effectively burned *Brushy Elegy* with an indelible mark.

42. The Sotheby's Catalogue entry will be associated with *Brushy Elegy* in perpetuity and any third-party performing background market research will easily encounter the Sotheby's Catalogue.

43. Third-parties like the Gallery have and will continue to rely on the estimate in the Sotheby's Catalogue in assessing the Painting's market value as long as the catalogue exists.

44. All catalogues published by Defendants, inclusive of the subject Sotheby's Catalogue, are intended for global dissemination with the intent of influencing consumers to buy Defendants' goods and thereby are used for commercial advertising and promotion.

45. Defendants' false estimate in its catalogue thus negatively and directly affects Plaintiff's legally protected interest in the Painting.

### AS AND FOR A FIRST CAUSE OF ACTION
### (NEGLIGENCE)

46. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

47. That at all times Defendants had a duty to act as a reasonable auction house would under the circumstances.

48. That Defendants breached their duty to this foreseeable Plaintiff, the owner of *Brushy Elegy* by failing to establish a truthful estimate for the Painting and/or failing to perform a modicum of due diligence in establishing the value.

49. That as a direct result Defendants' negligence, Plaintiff has suffered damages.

50. That damages sustained by Plaintiff were due to the failure of Defendants to use due care under the circumstances and in failing to meet its obligations as an auction house.

51. That said conduct of Defendants was negligent, careless, or reckless and resulted in damages to Plaintiff in an amount to be determined at trial, but at no time less than $650,000.

52. As a result of the foregoing, Defendants are liable to Plaintiff in an amount no less than $650,000.

### AS AND FOR A SECOND CAUSE OF ACTION
### (PRODUCT DISPARAGEMENT)

53. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

54. Defendants' false estimate of *Brushy Elegy* for $100,000 to $150,000 in their publication and advertising reflects negatively on *Brushy Elegy's* quality, condition and value.

55. Defendants' conduct amounts to a willful false statement, inasmuch as there is no reasonable dispute that based on previous dealings with Plaintiff and publicly available market data on *Brushy Elegy* that its value far exceeds Defendants' valuation.

56. Despite Defendants' knowledge and the availability of public data on *Brushy Elegy's* consignment history and value, Defendants published false statements regarding its value with malice towards the Plaintiff – knowledge of the statement's falsity or reckless disregard as to the truth of the statements.

57. As a direct and proximate result of Defendants' false estimate and publication, the Bernard Jacobson Gallery can no longer offer *Brushy Elegy* for the retail price of $650,000.

58. Therefore, as a direct and proximate result of Defendants' actions, Plaintiff has suffered damages insofar as the effect of their actions is the constructive total loss to the value of *Brushy Elegy*.

59. As a result of the foregoing, Defendants are liable to Plaintiff in an amount no less than $650,000.

## AS AND FOR A THIRD CAUSE OF ACTION
## (LANHAM ACT)

60. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

61. Defendants have falsely advertised and publicized that *Brushy Elegy* is valued at an estimate sale price of $100,000 to $150,000, falsely representing to the general public that *Brushy Elegy* is so valued.

62. Defendants have also falsely advertised and publicized that *Brushy Elegy* is so valued by failing to withdraw and counteract the adverse information that Defendants disseminated to the marketplace.

63. Defendants' false and misleading representations were unquestionably commercial in nature because they were published, disseminated, or otherwise communicated in the Sotheby's Catalogue and on Defendants' website with the intent of generating business for the November Day Sale (inclusive of *Brushy Elegy*).

64. In so doing, Defendants have made false and misleading representations of fact in commercial promotions or advertising made for the purpose of influencing purchasing decisions of the consuming public that misrepresent the nature, characteristics, qualities of geographic origin of *Brushy Elegy*, all in violation of the Lanham Act, 15. U.S.C. § 1125(a).

65. By reason of the foregoing, Plaintiff is entitled to damages against Defendants in an amount not less than $650,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (SLANDER TO TITLE)

66. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

67. Defendants have made false statements as to the rightful ownership of *Brushy Elegy* and its value.

68. Defendants' statements were made with the willful intent to wrongfully interfere with, or were made recklessly without regard to the consequences of the Plaintiff's interests in *Brushy Elegy*.

69. Defendants' conduct amounts to a willful false statement, inasmuch as there is no reasonable dispute that based on previous dealings with Plaintiff and publicly available market data on *Brushy Elegy* that its value far exceeds Defendants' valuation.

70. Despite Defendants' knowledge and the availability of public data on *Brushy Elegy's* consignment history and value, Defendants published false statements regarding its value with malice towards the Plaintiff – knowledge of the statement's falsity or reckless disregard as to the truth of the statements.

71. As a direct and proximate result of Defendants' false estimate, the Bernard Jacobson Gallery can no longer offer *Brushy Elegy* for the retail price of $650,000.

72. Therefore, as a direct and proximate result of Defendants' actions, Plaintiff has suffered damages insofar as the effect of their actions is the constructive total loss to the value of *Brushy Elegy*.

73. As a direct and proximate result of the Defendants' statements and actions, Plaintiff has suffered monetary damages in the amount of at least $650,000 plus attorneys' fees and costs to clear *Brushy Elegy* of the claims.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) for the sum of not less than $650,000;

(b) for pre-judgment and post-judgment interest from the date of loss;

(c) for costs and expenses associated with this action;

(d) attorney's fees in connection with pursuit of recovery of the stated damages, including, without limitation those in connection with this action; and

(e) for such other and further relief as this court deems proper and just.

Dated: March 22, 2016

                                              Respectfully submitted,

                                              Messner Reeves LLP

By: *[signature: Wendy J. Lindstrom]*

                                              Wendy Lindstrom (WL 2940)
                                              Hanoch Sheps (HS 0414)
                                              805 Third Avenue, 18th Fl.
                                              New York, New York 10022
                                              (646) 663-1860 (telephone)
                                              (646) 663-1895 (facsimile)
                                              wlindstrom@messner.com
                                              *Attorneys for Plaintiff, Oliver Sears*

To:    Sotheby's Inc.
         Sotheby's Art Sales Corp.
         Sotheby's Holding, Inc.
         1334 York Avenue
         New York, New York 10021