UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

OLIVER SEARS,                                          :
                                                       :
                              Plaintiff,               :        CM/ECF
              vs.                                      :
                                                       :        Index No.: 16-cv-2143 (VEC)
SOTHEBY'S, INC., SOTHEBY'S ART SALES CORP.,            :
and SOTHEBY'S HOLDING, INC.,                           :
                                                       :
                              Defendants.              :
--------------------------------------------------------------X


# MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


Wendy Lindstrom
Ruofei Xiang
Hanoch Sheps
Messner Reeves LLP
805 Third Avenue, 18th Fl.
New York, New York 10022
(646) 663-1860

*Attorneys for Plaintiff, Oliver Sears*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.   STANDARD OF REVIEW ..................................................................................... 3

II.  DEFENDANTS' INTRODUCTION OF NEW EVIDENCE IS INAPPROPRIATE
     AND DEMONSTRATES WHY THE PLAINTIFF SHOULD BE PERMITTED
     TO CONDUCT DISCOVERY IN THIS CASE ..................................................... 4

III. PLAINTIFF HAS ALLEGED FACTS TO ESTABLISH
     THE ELEMENTS OF NEGLIGENCE ................................................................... 5

     Defendants Owed Plaintiff a Duty ...................................................................... 6

     Defendants Breached their Duty of Care to the Plaintiff .................................... 7

     Defendants' Breach Caused Plaintiff's Damages .............................................. 11

IV.  PLAINTIFF HAS SUFFICIENTLY PLED PRODUCT DISPARAGEMENT ...... 11

     Defendants' Representations Concerning *Brushy Elegy* are False ................... 11

     Defendants Published Their Statements in Sotheby's Catalogue ..................... 13

     Defendants Acted with Malice ........................................................................... 13

     Defendants' Actions Caused Plaintiff Special Damages ................................... 15

V.   PLAINTIFF HAS SUFFICIENTLY PLED SLANDER OF TITLE ...................... 16

VI.  PLAINTIFF HAS SUFFICIENTLY PLED LANHAM ACT VIOLATIONS ....... 17

     The Representation was Literally False and/or False on its Face,
     and Likely to Mislead or Confuse Consumers .................................................. 18

     The Estimate was in Commerce, Used for Commercial
     Advertising or Promotion and Caused Damage ................................................ 19

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (1957) ...................................................................................3

*Banco Multiple Santa Cruz, S.A. v. Moreno*, 888 F.Supp.2d 356 (E.D.N.Y. 2012)..................6, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................2, 3

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)...........................................13

*Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246,
    No. 04-CV-6017 (KMK) (S.D.N.Y. 2007).......................................................................16

*Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F.Supp. 150 (S.D.N.Y. 1983) .......................15

*Christie's Inc. v. Davis*, 247 F.Supp.2d 313 (S.D.N.Y. 2002) ...................................................12

*Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001) ...........................................14

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987) ......................................13

*Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039 (N.D.N.Y. 2016),
    *reconsideration denied*, 2016 WL 1639903 (N.D.N.Y. Apr. 25, 2016) .................................18

*Gmurzynska v. Hutton*, 355 F.3d 206 (2d Cir. 2004)................................................................17

*Gunther v. Airtran Holdings, Inc.*, 05-CV-2134, 2007 WL 193592 (S.D.N.Y. 2007)...................9

*Karedes v. Ackerley Group, Inc.*, 423 F.3d 107 (2d Cir. 2005)..............................................12, 14

*Kirby v. Wildenstein*, 784 F. Supp. 1112 (S.D.N.Y. 1992).....................................................11, 15

*Korean Air Lines Co. v. McLean*, 118 F.Supp.3d 471 (E.D.N.Y. 2015) ......................................9

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 655 F. Supp. 346 (S.D.N.Y. 1987),
    on reargument, 664 F. Supp. 91 (S.D.N.Y. 1987), rev'd, 859 F.2d 242 (2d Cir. 1988) ...........5

*Nasdaq Stock Market, Inc. v. Archipelago Holdings, LLC*,
    336 F. Supp.2d 294 (S.D.N.Y. 2004) .................................................................................3

*Northington v. Gospel Volunteers Inc.*, No. 04-CV-7589 (RNB) (DFE),
    2007 WL 541700 (S.D.N.Y. 2007)................................................................................5, 7

*Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385
    (S.D.N.Y. 2014), aff'd, No. 14-4022-CV, 2016 WL 80577 (2d Cir. 2016)............................18

*Ruiz v. City of New York*, No 14-CV-5231 (VEC),
   2015 WL 5146629 (S.D.N.Y. 2015).................................................................2

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir.2007) ....................................18

*Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*,
   516 F.Supp.2d 270 (S.D.N.Y. 2007) ...........................................................17, 18

*World Wrestling Fed'n Entm't, Inc. v. Bozell*,  142 F.Supp.2d (S.D.N.Y. 2001)..........................13

## State Cases

*Di Ponzio v. Riordan*,  89 N.Y.2d 578 (1997) ...............................................................6

*Lauer v. City of New York*, 95 N.Y.2d 95 (2000) ...........................................................6

*Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579 (1994) ..............................................7

*Steinhilber v. Alphonse*, 68 N.Y.2d 283 (1986)............................................................12

## Federal Statutes

Lanham Act............................................................................1, 16, 18, 19

## Federal Rules

Federal Rule of Civil Procedure 8(a)(2) ....................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...................................................................2, 3

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted in opposition to Defendants Sotheby's, Inc., Sotheby's Art Sales Corp., and Sotheby's Holdings' ("Sotheby's") Motion to Dismiss. For all the reasons stated herein, as well as in the Declaration of Wendy J. Lindstrom, Esq., ("Lindstrom Decl.") and annexed exhibits, the Defendants' Motion to Dismiss should be denied in its entirety.

The Plaintiff opposes the Defendants' Motion on the basis that: (1) the Plaintiff's Complaint alleged facts and pled elements that establish a *prima facie* case of negligence; (2) the facts in the Complaint are sufficient to set forth plausible claims for slander, product disparagement and Lanham Act violations; and (3) the Plaintiff should be permitted to conduct discovery as there are many facts and documents, like those attached to the Defendants' Motion, which are unbeknownst to the Plaintiff and to which only the Defendants are privy – the Defendants should disclose these facts and documents through discovery rather than surprise the Plaintiff and the Court with them on a dispositive motion.

## STATEMENT OF FACTS

The Court is respectfully directed to the Complaint for the facts known to the Plaintiff at the time it was drafted and filed. *Lindstrom Decl.*, Exhibit A. This lawsuit concerns a Robert Motherwell painting titled *Brushy Elegy* owned by the Plaintiff, Oliver Sears. No other painting or "Consigned Motherwell" (referenced in the Defendants' Motion) is relevant to this lawsuit. As pled in the Complaint, Sotheby's included *Brushy Elegy* in its November 2015 auction catalogue, but the Plaintiff never consigned *Brushy Elegy* to Sotheby's for sale and he was the only person who had the right to do so.

The Defendants are trying to misdirect the Court's attention by claiming that the painting which they were actually selling was a "Consigned Motherwell." This case is not about a "Consigned Motherwell" – it is about *Brushy Elegy*. On Page 140 / Lot 152 of the Defendants' November 2015 Day Sale Catalogue (the "Catalogue") they did not list "Consigned Motherwell" – it specifically advertised *Brushy Elegy* for sale. *Lindstrom Decl.*, Exhibit B. The Defendants' estimate for Lot 152 was not for a "Consigned Motherwell" – it was for *Brushy Elegy*.

The new facts discussed in the Defendants' Memorandum of Law in Support of its Motion to Dismiss and the documents attached to the Declaration of John R. Cahill demonstrate the breadth of facts and documents concealed from and unbeknownst to the Plaintiff when he filed his Complaint. Notwithstanding this disclosure of these documents, all subsequent references by the Defendants to any "Consigned Motherwell" are irrelevant to the matter at bar and have no bearing on this Motion.  The only painting that is the subject of this lawsuit is *Brushy Elegy*.

## ARGUMENT

### I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Ruiz v. City of New York*, No 14-CV-5231 (VEC), 2015 WL 5146629 at \*2 (S.D.N.Y. 2015) (citing *Meyer v. JinkoSolar Holdings Co., Ltd.*, 761 F.3d 245, 249 (2d Cir. 2014)).

Furthermore, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests.  ... A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The United States Supreme Court in *Twombly* also held that a complaint needs to plead

"only enough facts to state a claim to relief that is plausible on its face" but noted that its new plausibility standard is not akin to a "probability requirement" at the pleading stage. *Id.* at 556. The standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Id.*

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Nasdaq Stock Market, Inc. v. Archipelago Holdings, LLC*, 336 F. Supp.2d 294, 299-300 (S.D.N.Y. 2004). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662 (1957). Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.   DEFENDANTS' INTRODUCTION OF NEW EVIDENCE IS INAPPROPRIATE AND DEMONSTRATES WHY THE PLAINTIFF SHOULD BE PERMITTED TO CONDUCT DISCOVERY IN THIS CASE.

The Defendants argue that "when a 'plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading.'" The Plaintiff did not fail to introduce a document. Prior to the instant Motion, the Plaintiff had never seen the Consignment Agreement annexed thereto. While it is the Plaintiff's view that the Consignment Agreement is an unpersuasive document, its inappropriate disclosure in the context of this Motion provides one of numerous reasons why the Plaintiff should be permitted to proceed with discovery. First, a consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself. Second, the mere disclosure of the Consignment Agreement alerts the Plaintiff to potentially liable third parties who have made

representations and warranties with respect to *Brushy Elegy*. That said, the Plaintiff should be allowed to develop the facts that have been deliberately concealed by the Defendants.

New facts that Defendants introduce in their motion fail to attack the sufficiency of Plaintiff's pleadings; rather, they are factual contentions which go to the merits of the case and should be developed through discovery. For example, the Defendants' Memorandum of Law states: "In the days prior to that auction, Sotheby's received information indicating that the 'Consigned Motherwell' might not be an authentic work created by the artist Robert Motherwell." This leads the Court to believe that Defendants properly withdrew the work and acted appropriately under the circumstances. However, these are merely Defendants' factual assertions, which are in dispute and do not have any bearing on the adequacy of Plaintiff's pleadings. In reality, Plaintiff contacted the Defendants to demand that they remove *Brushy Elegy* from their Catalogue. Notwithstanding and despite the Plaintiff's demands for immediate action, Sotheby's did not remove *Brushy Elegy* from the online version of the Catalogue for four days. Further damage may have been avoided had Sotheby's explained its eventual withdrawal, but Sotheby's made things exponentially worse when it inexplicably withdrew *Brushy Elegy* from the sale. Meanwhile the printed version of the Catalogue was sent around the world and the online image of the Catalogue became ubiquitous – both exist in perpetuity for all art collectors, advisors, dealers, gallerists, appraisers and auctioneers to see.

The Defendants, who until the filing of their Motion to Dismiss, did not give the Plaintiff any explanation of how *Brushy Elegy* appeared in their Catalogue, have yet to explain how they arrived at their erroneous and grossly undervalued estimate.  Sotheby's never inspected *Brushy Elegy* prior to publishing its false advertisement of sale. Had the Defendants properly done their due diligence and inspected the "Consigned Motherwell," they would have immediately known

that the "Consigned Motherwell" was not *Brushy Elegy*. The Defendants concealed the Consignment Agreement, and now when convenient for them submit it as evidence to inappropriately attack the Plaintiff's pleadings. All information and documents in their possession relating to the advertisement of *Brushy Elegy* for sale and appraisal should be discoverable.

The Plaintiff is also not privy to Sotheby's organizational charts, the obligations of any particular Sotheby's entity or their corporate relationships. Plaintiff named the three Sotheby's entities based on the information available to the Plaintiff, including what was listed in the Catalogue and online. The Plaintiff also utilized public records available via the New York State Department of State and prior litigations involving Sotheby's. Allegations against all three entities were properly pled and must stand until documentary evidence or testimony of an officer of the company proves otherwise. For these reasons and in the interests of justice, the Court should allow the Plaintiff to proceed with discovery on all issues prior to dismissing the Complaint against any of the Sotheby's entities.

## III.    PLAINTIFF HAS ALLEGED FACTS TO ESTABLISH THE ELEMENTS OF NEGLIGENCE.

The Plaintiff's Complaint properly pled all the requisite elements to establish a *prima facie* negligence claim. To establish a *prima facie* case of negligence under New York law, the plaintiff must prove that the defendant owed the plaintiff a duty of care, the defendant breached its duty of care to the plaintiff, the plaintiff suffered an injury, and the defendant's breach was the proximate cause of the injury. *Northington v. Gospel Volunteers Inc.,* No. 04-CV-7589 (RNB) (DFE), 2007 WL 541700, at *4 (S.D.N.Y. 2007); *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F. Supp. 346, 358 (S.D.N.Y. 1987), on reargument, 664 F. Supp. 91 (S.D.N.Y. 1987), rev'd, 859 F.2d 242 (2d Cir. 1988).

**Defendants Owed Plaintiff a Duty**

It is a core tenet of New York law that:

> whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense ... would at once recognize that if he did not use **ordinary care and skill** in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, **a duty arises to use ordinary care and skill to avoid such danger**.

*Craig Test Boring Co.*, 138 F.Supp.2d 553, 557 (S.D.N.Y. 2001) (emphasis added); *Banco Multiple Santa Cruz, S.A. v. Moreno*, 888 F.Supp.2d 356, 367-68 (E.D.N.Y. 2012) (citing *Lauer v. City of New York*, 95 N.Y.2d 95, 109 (2000) (quoting *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386 (1980)) (quoting *Heaven v. Prender*, 11 Q.B.D. 503, 509 (1883)).

In applying the language of the above tenet, a duty arises as follows: the Defendants were "in such a position with regard to [*Brushy Elegy's* owner] that every one of ordinary sense ... would at once recognize that if [Defendants] did not use ordinary care and skill in [their] own conduct with regard to the circumstances [of appraising, advertising, and selling they] would cause danger of injury to [the owner of the *Brushy Elegy*]." The Defendants owed the Plaintiff a duty.

The courts look to whether the relationship of the parties gives rise to a duty of care, including whether the plaintiff was within the zone of foreseeable harm, and whether the damage was within the reasonably foreseeable risks. *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583 (1997) (internal quotation marks and citations omitted); *see also Lauer*, 95 N.Y.2d at 108, *Banco Multiple Santa Cruz, S.A.*, 888 F.Supp.2d at 367-68. Plaintiff, the owner of *Brushy Elegy* was in the zone of foreseeable harm and the damage caused by Sotheby's was within the reasonably foreseeable risks, because he is the only party with a real interest in *Brushy Elegy*. Sotheby's actions directly impacted both Plaintiff's interest and *Brushy Elegy*'s value.

The Defendants' arguments concerning the requirement of a "special relationship" relates to pleading negligent misrepresentation claims. The Plaintiff is not pleading negligent misrepresentation – the Plaintiff is pleading negligence. There is no requirement of a special relationship in a negligence claim. The Defendants' entire argument in this regard is moot.

## Defendants Breached their Duty of Care to the Plaintiff

A defendant is negligent when the defendant breaches the duty of care imposed by law by engaging in conduct posing an unreasonable risk of harm to others. *Craig Test Boring Co.*, 138 F. Supp.2d at 557. The primary factors to be taken into account in assessing the reasonableness or unreasonableness of the risk of harm of a defendant's conduct are (1) the foreseeable likelihood that it will result in harm, and (2) the foreseeable severity of the harm that may ensue and the burden that would be borne by the actor and others if the actor takes precautions that eliminate or reduce the possibility of harm. *Id.*; *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585-57 (1994). Because of the wide variety of circumstances under which negligence actions arise, issues such as whether the defendant took adequate means to prevent the loss, whether the loss was foreseeable, the burden imposed on the defendant to prevent the loss are in most cases best left for the trier of fact to decide. *Northington*, 2007 WL 541700, at *4 (citing *Rotz v. City of New York*, 143 A.D.2d 301, 303 (1st Dep't 1988) (holding that "[i]ssues of negligence, foreseeability and proximate cause involve the kinds of judgmental variables which have traditionally, and soundly, been left to the finders of fact to resolve even where the facts are essentially undisputed.").

The Defendants are reasonably expected to perform due diligence on all consignments prior to listing, appraising and advertising them for sale. Sotheby's posed an unreasonable risk of harm to the owner of *Brushy Elegy* by inadequately performing due diligence, if they performed any. It is generally understood by the public and those who are familiar with the art market, that

Sotheby's is one of the oldest, largest and most experienced art auction houses in the world. According to the Conditions of Sale found in every Sotheby's catalogue, Sotheby's boasts that "[o]ur appraisals are widely accepted by the Internal Revenue Service, tax and estate planning professionals, and insurance firms". *Lindstrom Decl.*, Exhibit C at pg. 395. When an institution, whose work product governmental entities, private industries and individuals rely on, fails to adequately research, inspect, appraise and advertise, they have failed to use their ordinary care and skill, creating an unreasonable risk of harm. In this case, the Defendants' failure to exercise ordinary care resulted in the injury to *Brushy Elegy.* The Defendants should have conducted due diligence.

The documents which the Defendants annexed to the instant Motion are further proof of their failure to use ordinary care and skill. The Defendants and the consignor executed the Consignment Agreement on February 9, 2015. Defendants had at least nine months to conduct due diligence, inspect the painting and confirm the authenticity; Sotheby's did not do so. One question to the alleged "trusted source" – "Where did you get this painting?" would have revealed that there was a discrepancy from the provenance cited in the Catalogue entry on page 140:

> PROVENANCE
> Dedalus Foundation, New York
> Acquired by the present owner from the above in 2004.

*Lindstrom Decl.*, Exhibit B at pg. 140.[1] Red flags should have been immediately raised during a cursory investigation. It would have been impossible for Sotheby's "trusted source" with whom "Sotheby's had a long standing relationship" to maintain that they acquired *Brushy Elegy* from the Dedalus Foundation because Sotheby's knew or should have known in 2012 that it was the Plaintiff who acquired it from the Foundation in 2004. If Sotheby's had asked their "trusted source" where

---

[1] Robert Motherwell founded the Dedalus Foundation, which now manages the Estate of Robert Motherwell.

they purchased *Brushy Elegy*, they also would have found the discrepancy with the provenance listed in the Catalogue Raisonné, which they quoted in the advertisement for sale of *Brushy Elegy*.

Evidence of customary procedures and practices also reflect on the reasonableness of a defendant's behavior. *Gunther v. Airtran Holdings, Inc.,* 05-CV-2134, 2007 WL 193592 at *3 (S.D.N.Y. 2007); *see also Korean Air Lines Co. v. McLean*, 118 F.Supp.3d 471, 486 (E.D.N.Y. 2015) (citing *Cruz v. New York City Transit Auth.,* 136 A.D.2d 196, 196 (2d Dep't 1988) ("[p]roof of a generally accepted practice, custom or usage within a particular trade or industry is admissible as tending to establish a standard of care, and proof of a departure from that general custom or usage may constitute evidence of negligence.")). It is customary and necessary for art auction houses to have physical possession of works to inspect them to appraise them for auction.[2] Sotheby's did not have physical possession of *Brushy Elegy*, it was on the Plaintiff's wall in Ireland at all relevant times. Sotheby's did not inspect *Brushy Elegy* prior to listing it for sale as Lot 152 in the Catalogue. Sotheby's definitely did not take an in-person photograph of *Brushy Elegy* at any time. Because of the unrepeatable way the ink bled into the halo effect in *Brushy Elegy* via capillary action of the paper as can be seen in the Catalogue picture, Sotheby's likely published an image of the poster of *Brushy Elegy*, which was issued by the Dedalus Foundation to commemorate the importance of *Brushy Elegy*. This calls into question whether Sotheby's even inspected the "Consigned Motherwell" – they most likely never did. As they have operated as an auction house since 1744, they are certainly in a position to know what is customary and necessary. Their departure from that long-held custom and practice speaks to the unreasonableness of their behavior and, by consequence, constitutes evidence of their negligence.

---

[2] An expert has already opined that, Sotheby's failed to cite the artist's studio number which was inscribed on the back of the painting and the fact that *Brushy Elegy* entered the Dedalus Foundation in 1991. Plaintiff posits that this omission is because the Defendants never had the physical object and thus never saw this information.

This matter is especially sensitive in light of a series of recent and ongoing litigations in the Southern District concerning forgeries of art masterpieces, including Robert Motherwell's "Spanish Elegies", sold by the Knoedler Gallery, one of the oldest and most respected art galleries in the United States, over the course of fifteen years prior to 2012.[3] The current Chairman of Sotheby's Board of Directors, Domenico De Sole ("De Sole"), was a plaintiff in one of the litigations claiming that he purchased a fake painting from the Knoedler Gallery in 2004 for $8.3 million.[4] The Knoedler scandal sent shockwaves throughout the entire fine art industry and is still currently garnering widespread media attention. On May 22, 2016, CBS News aired a 60 Minutes episode entitled "80 Million Dollar Con."[5] The episode touched upon the breadth of the scandal and specifically focused on the Motherwell, "Spanish Elegy" forgeries emphasizing the importance of due diligence and an ongoing commonplace fraud concerning Motherwell's work, which would put an average collector on notice.

In the 60 Minutes segment, Sotheby's De Sole admits that his only "due diligence" was purchasing from the "best, most prominent gallery in the United States dealing with a person with a stellar reputation." *See 60 Minutes: $80 Million Dollar Con.* (CBS television broadcast May 23, 2016). Reliance on a trusted source in the Knoedler scandal was clearly insufficient. Reliance on a trusted source in this matter was equally insufficient. This is a classic case of "fool me once, shame on you; fool me twice, shame on me." Here, as Sotheby's is an expert in the art field, its actions as alleged in the Complaint further demonstrate the inadequacy of their due diligence and the absurdity of their reliance on a "trusted" consignor. Sotheby's reliance on a "trusted source" is

---

[3] Since 2011, at least nine actions were filed in the Southern District alone regarding the fallout of the Knoedler Gallery scandal including, 12-cv-02313 (PGG) (HBP); 13-cv-08495 (PGG) (HBP); 11-cv-08757 (PGG); 13-cv-00657 (PGG) (HBP); 13-cv-01193; 12-cv-01193 (PGG) (HBP); 13-cv-08515 (PGG) (HBP); 13-cv-03011 (PGG) (HBP); and 14-cv-02259 (JPO) (HBP).

[4] Domenico De Sole was the plaintiff in *De Sole et al. v. Knoedler Gallery, LLC et. al.* (12-cv-02313 (PGG) (HBP).

[5] *60 Minutes: 80 Million Dollar Con.* (CBS television broadcast May 23, 2016) *video and transcript available at* http://www.cbsnews.com/news/60-minutes-80-million-art-fraud-anderson-cooper/.

unreasonable and reckless, especially in light of the recent Motherwell "Spanish Elegy" frauds involved in the Knoedler scandal.

**Defendants' Breach Caused Plaintiff's Damages**

The Plaintiff has established a duty to act as a reasonable auction house would in investigating, appraising and advertising works for sale. That duty was breached by Sotheby's and that breach caused significant damages to the Plaintiff. *Brushy Elegy* is unmarketable, burned and depreciated. *Lindstrom Decl.*, Exhibit C.

## IV. PLAINTIFF HAS SUFFICIENTLY PLED PRODUCT DISPARAGEMENT

"[P]roduct disparagement refers to words or conduct which tend to disparage or reflect negatively on the quality, condition or value of a product or property." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1115 (S.D.N.Y. 1992). The elements of a product disparagement claim are: (1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. *Gucci America Inc. v. Duty Free Apparel*, Ltd. 277 F. Supp.2d 269, 276 (S.D.N.Y. 2003). The tort of product disparagement provides an owner of art with legal recourse against an expert in the field, such as Sotheby's, who destroys the value of the owner's work. The Plaintiff has met all of the elements of a cause of action sounding in product disparagement.

**Defendants' Representations Concerning *Brushy Elegy* are False**

The Defendants' publication misrepresents that *Brushy Elegy* was consigned to the Defendants by the present owner for sale at auction. Furthermore, the listing of *Brushy Elegy* included a false valuation of the work at $100,000 to $150,000. This valuation is wildly inaccurate and baseless considering that the Bernard Jacobson Gallery valued *Brushy Elegy* in 2015 at $650,000, which was further confirmed by Victor Wiener, a certified art appraiser and former executive director of the Appraisers Association of American for 21 years. *Lindstrom Decl.*,

Exhibit C at pp. 25, 27. The Second Circuit has ruled that falsity is a fact-based issue, which is not amenable to adjudication on a motion to dismiss as any falsity inquiry necessarily requires discovery. *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 118-119 (2d Cir. 2005) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)). There are fact-based issues that surround Defendants' preparation, review, and dissemination of the Catalogue contributing to the falsity of the publication, which cannot be determined at this stage.

The Defendants' argument that the listed valuation of *Brushy Elegy* is merely an expression of opinion is unfounded. A valuation of artwork is not merely pure opinion; rather it involves an assessment of "mutable factors, both economic and aesthetic." *Christie's Inc. v. Davis*, 247 F.Supp.2d 313, 421 (S.D.N.Y. 2002). A statement reflecting the valuation of artwork implies that the speaker "knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking" and such a statement is deemed actionable in New York. *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (1986). An inquiry must be made on what the average person reading the communication would take it to mean, including a consideration of the context of the communication and whether the statement has a meaning which is readily understood. *Id.*

Here, a reader of the Catalogue would believe that the owner of *Brushy Elegy* intended to and agreed to sell *Brushy Elegy* at a Day Sale, which already reflects negatively upon the value of *Brushy Elegy*. Further, the Defendants' erroneous and injurious valuation of *Brushy Elegy* necessarily guides and affects a reader's quantification of the value and reasonable price range of *Brushy Elegy*. Sotheby's valuation and appraisal services are renowned both within and outside of the art industry. Its own Catalogue introducing its services indicates that its appraisals are widely accepted by the Internal Revenue Service, tax and estate planning professions, and insurance firms.

As such, the Defendants' listing of *Brushy Elegy* for sale and its valuation of *Brushy Elegy* are actionable statements. The Plaintiff has sufficiently alleged the falsity element of a product disparagement claim.

**Defendants Published Their Statements in Sotheby's Catalogue**

There is no question that there was a publication as the Catalogue was widely disseminated via print and online media. This is not contested by the Defendants.

**Defendants Acted with Malice**

To show actual malice, a plaintiff must demonstrate that the defendant "had a subjective awareness of either falsity or probable falsity of the defamatory statement, or acted with reckless disregard of its truth or falsity." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 182 (2d Cir. 2000) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Actual malice is subjective, and a court will infer from objective facts. *See Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted."). To show common law malice, a plaintiff must demonstrate "a reckless disregard of the [defamed party's] rights and of the consequence that may result to him." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F.Supp.2d, 514, 532 (S.D.N.Y. 2001).

The Complaint alleges that the Defendants intentionally published, without the Plaintiff's consent or knowledge, an advertisement falsely representing that *Brushy Elegy* was consigned to Sotheby's for sale with a grossly low valuation, with knowledge of its falsity or reckless disregard as to the truth or falsity of its representations. The Defendants knew or should have known since 2012 that the Plaintiff is the owner of *Brushy Elegy*. The Plaintiff sought an auction estimate from

the Defendants in 2012, but refused to consign *Brushy Elegy* when the Defendants provided an erroneous valuation of *Brushy Elegy*. That same year, the Plaintiff consigned *Brushy Elegy* for private sale to the Bernard Jacobson Gallery in London with a retail price of $500,000, which appreciated in value to $650,000 by 2015. Sotheby's, a renowned auction house, should have known these facts upon performing reasonable due diligence and in the valuation of *Brushy Elegy*. However, Sotheby's never inspected *Brushy Elegy* and intentionally listed *Brushy Elegy* for sale at a grossly undervalued number despite being unauthorized to do so. The Defendants' subsequent actions of withdrawing *Brushy Elegy* from sale without an explanation further shrouds the authenticity, ownership, value, and marketability of *Brushy Elegy* in a "cloud of suspicion." Such allegations properly set forth the element of malice in both the actual and common law sense.

Any new "fact" or exhibit introduced by Defendants that purportedly demonstrates their good faith reliance on their trusted consignor's representations concerning the consignment and authenticity of *Brushy Elegy* is inappropriate to attack the sufficiency of the Plaintiff's pleadings on a motion to dismiss and may not be considered by the Court. Any such fact that was exclusively within the Defendants' knowledge and control is subject to discovery. As noted above, an actual malice inquiry typically requires discovery. *See Church of Scientology*, 423 F.3d 107 at 118-119; *see also Karedes*, 423 F.3d 107 at 119 (the Court reasoned that "plaintiff may be able to adduce facts to establish the defendant's subjective doubts about the truth of the publication" and vacated dismissal of the complaint). As such, any determination as to whether the Defendants acted with malice cannot be made at this time without affording the Plaintiff an opportunity to conduct discovery.

Even assuming, *arguendo*, that the Defendants' new facts are allowed to be considered, the Defendants' Master Consignment Agreement was signed on February 9, 2015. The Defendants

had nine months prior to publication of the Catalogue to reasonably inspect, appraise, review or otherwise perform the requisite due diligence. The Defendants knew or should have known of the falsity of their representations in the Catalogue. They had at least nine months to ask their "consignor," their "trusted source," where it obtained the consigned work. The Plaintiff's Complaint sufficiently pleads the element of malice.

**Defendants' Actions Caused Plaintiff Special Damages**

The value of *Brushy Elegy* was severely impacted as a direct consequence of the Defendants' actions. The Complaint states that as a direct result of the Defendants' unauthorized publication, the Bernard Jacobson Gallery rescinded its offer to have *Brushy Elegy* on consignment at the retail price of $650,000. The Defendants then continued to grossly diminish the value of *Brushy Elegy* by withdrawing it from the sale without an official retraction or explanation, effectively "burning" the work in industry terms. Special damages are sufficiently pled when a loss is identified with pecuniary or economic value and are the "natural and immediate consequence of the disparaging statements." *Kirby,* 784 F.Supp. 1112 at 1116.

The Plaintiff properly identifies a specific and particularized economic loss. This is consistent with the applicable law on special damages as the Defendants impaired the vendibility of *Brushy Elegy*, rendering it effectively unmarketable. *Lindstrom Decl.*, Exhibit C. The Defendants caused the loss of *Brushy Elegy's* commercial value of $650,000 as determined by the Bernard Jacobson Gallery and confirmed by Victor Weiner, a certified fine art appraiser. Moreover, this naturally results in a loss of prospective buyers, who need not be named at this stage prior to discovery as the Plaintiff's business prevents the specific identification of customers. *See Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F.Supp. 150, 156 (S.D.N.Y. 1983) (noting

the impossibility of any identification of lost customers in an amorphous market). Thus, the Plaintiff has sufficiently pled special damages with the requisite particularity.

The Complaint meets all elements of a product disparagement claim. The Defendants' arguments in their Motion to Dismiss is untenable and fails as a matter of law.

## V.    PLAINTIFF HAS SUFFICIENTLY PLED SLANDER OF TITLE

To establish slander of title under New York law, a plaintiff must demonstrate: "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." *Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246 at *11, No. 04-CV-6017 (KMK) (S.D.N.Y. 2007) (quoting *39 Coll. Point Corp. v. Transpac Capital Corp.*, 27 A.D.3d 454, 455 (2d Dep't 2006)). New York courts have interpreted this cause of action as requiring a showing of malice. *Id.*

The Plaintiff respectfully refers the Court to arguments on malice and special damages set forth above (at **Point IV**). In sum, the Complaint alleges that the Catalogue listing *Brushy Elegy* for sale is in and of itself a communication falsely casting doubt on the Plaintiff's ownership of *Brushy Elegy* as it inaccurately and injuriously represents the Plaintiff's consent to offer *Brushy Elegy* for sale by Sotheby's. The listing was published by Sotheby's intentionally with the knowledge of its falsity or with reckless disregard for the veracity of the publication. As a direct result of the Defendants' actions, the Plaintiff suffered specific economic harm as the Bernard Jacobson Gallery rescinded the offer to accept consignment of *Brushy Elegy* for $650,000. The Plaintiff has pled facts sufficient to plausibly state a claim for slander of title.

## VI.    PLAINTIFF HAS SUFFICIENTLY PLED LANHAM ACT VIOLATIONS

The Plaintiff has properly pled his Lanham Act claims.  Under the Lanham Act, a the Plaintiff must show in connection with any goods or services: (1) the use of a false or misleading

description of fact, or false or misleading representation of fact; (2) in commerce; (3) for commercial advertising or promotion; (4) by any person who believes that he or she is or is likely to be damaged by such act. *Gmurzynska v. Hutton,* 355 F.3d 206, 210 (2d Cir. 2004).

The Plaintiff has pled these 4 elements. (1) The Defendants falsely represented a fact – the Sotheby's Catalogue at page 140 / Lot 152 offered *Brushy Elegy* for sale, but it was not for sale. (2) In commerce – the Defendants published the Catalogue in print and online media advertising the sale to current and prospective clients all over the world, placing *Brushy Elegy* in commerce for all to see. (3) For commercial advertising or promotion – the Catalogue photo of *Brushy Elegy,* the description of the proper provenance of *Brushy Elegy,* exhibition list, reference in scholarly materials and misleading estimate of *Brushy Elegy* were Sotheby's way of advertising and promoting the sale of *Brushy Elegy*; and (4) by any person who believes that he or she is or is likely to be damaged by such act - A qualified expert, Victor Wiener, opined that the Plaintiff and his interest in *Brushy Elegy* were significantly damaged by this false and misleading representation to the amount of $650,000. *Lindstrom Decl.*, Exhibit C.

**The Representation was Literally False and/or False on its Face,
and Likely to Mislead or Confuse Consumers**

Under the first element, the Plaintiff has shown (1) that the challenged advertisement of promotion is 'literally false, *i.e.*, false on its face,' or (2) that the "advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *See Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*, 516 F.Supp.2d 270, 284 (S.D.N.Y. 2007) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152–53 (2d Cir.2007)).

The challenged advertisement is literally false – *Brushy Elegy* was never for sale and *Brushy Elegy* was far more valuable than Sotheby's estimate of $100,000 - $150,000. Offering *Brushy Elegy* for sale was misleading and confusing to consumers, especially with such an

unrealistic and grossly undervalued estimate. A representation that could reasonably be seen as stating or implying provable facts is actionable under the Lanham Act. *See Wellnx Life Sciences, Inc.*, 516 F.Supp.2d 270 at 285. A statement is also literally false if it unambiguously conveys a message and that message conflicts with reality. *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385, 412 (S.D.N.Y. 2014), aff'd, No. 14-4022-CV, 2016 WL 80577 (2d Cir. 2016) (noting that whether a statement is literally false is, generally speaking, a matter of fact.). Not much is necessary to see that the advertisement states and implies provable facts and whose stated message conflicts with reality. It is a provable fact that *Brushy Elegy* was not for sale by the Plaintiff. It is also provable that not only an industry expert, but gallerists, have assigned a value to *Brushy Elegy* well beyond the Defendants' estimate.

Once the plaintiff has shown that the statement is literally or facially false, consumer deception is presumed, and "the court may grant relief without reference to the advertisement's [actual] impact on the buying public." *Time Warner Cable, Inc.,* 497 F.3d 144 at 153. The Plaintiff's pleadings clearly allege that the Defendants' advertisement is a false and misleading representation of fact. The Defendants have once again misconstrued the Plaintiff's pleadings – the Plaintiff argues that the statement is literally false and thus need not prove the impact on the public. For the avoidance of doubt, Courts regularly recognize that even where "no combination of words" found in the advertisement is untrue, the message conveyed by the advertisement may still be "literally false" if its clear meaning, considered in context, is false. *Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039, at *8 (N.D.N.Y. 2016), *reconsideration denied*, 2016 WL 1639903 (N.D.N.Y. Apr. 25, 2016).

**The Estimate was in Commerce, Used for Commercial**
<u>**Advertising or Promotion and Caused Damage**</u>

The false and misleading estimate by Sotheby's was thrust into commerce, used for commercial advertising and promotion of *Brushy Elegy* when Sotheby's marketed the Catalogue to the world and published it online. Sotheby's severely and irreparably damaged *Brushy Elegy's* value.

The Plaintiff has properly pled its Lanham Act claim with respect to the Defendants' advertisement of *Brushy Elegy* for sale and the Defendants' Motion to Dismiss must be denied.

## <u>CONCLUSION</u>

The crux of this case is about providing recourse to an injured party through principles of law and equity. To dismiss the Plaintiff's claims at this stage would set a precedent that owners of art throughout the world would have no recourse against industry experts who blatantly fail to perform due diligence. They hold themselves out as experts and should adhere to best practices reflecting their position in the industry. Principles of fairness and justice support allowing the Plaintiff the opportunity to proceed to ensure recourse against these Defendants.

For the reasons set forth above, the Plaintiff respectfully submits that the Court deny Defendants' Motion to Dismiss in its entirety, along with reasonable attorneys' fees, costs, and disbursements together with such other and further relief as this Court deems just and proper.

Dated: May 25, 2016

Respectfully submitted,

Messner Reeves LLP

By: _Wendy J. Lindst_____

Wendy Lindstrom
Ruofei Xiang
Hanoch Sheps
805 Third Avenue, 18th Fl.
New York, New York 10022
(646) 663-1860 (telephone)
(646) 663-1895 (facsimile)
wlindstrom@messner.com
*Attorneys for Plaintiff, Oliver Sears*