G6HAASEAC                      Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

OLIVER SEARS,

        Plaintiff,

    v.                              16 CV 2143 (VEC)

SOTHEBY'S INC.,

        Defendants.

------------------------------x

                              New York, N.Y.
                              June 17, 2016
                              10:31 a.m.

Before:

             HON. VALERIE CAPRONI,

                              District Judge

               APPEARANCES

MESSNER REEVES LLP
    Attorneys for Plaintiff Sears
BY:  HANOCH SHEPS
WENDY J. LINDSTROM


CAHILL PARTNERS LLP
    Attorneys for Defendants Sotheby's
BY:  JOHN R. CAHILL
PAUL COSSU

1       THE COURT:  OK.  We got a Lanham Act and Negligence
2  Act.  The motion to dismiss is fully briefed.  As you just
3  heard me talking to the require case.  You have the right to
4  amend your complaint rather than to respond.  You've responded
5  but I am going to give you another opportunity.  Do you want to
6  amend your complaint?
7       MS. LINDSTROM:  No, your Honor.
8       THE COURT:  You've done the best you can do.
9       MS. LINDSTROM:  I think so, your Honor.  The only
10 thing I might add is counsel for defendants have now brought up
11 negligent misrepresentation arguments.  So in the alternative
12 we haven't been able to submit a -- on that issue.  Maybe in
13 the alternative if we could put a sur-reply on that one issue.
14 That would be something that would be interested in doing.  And
15 also if we need to amend the complaint to add a negligent
16 misrepresentation maybe we will be willing to do that.  But we
17 still believe that our complaint stands as it is.
18      MR. CAHILL:  I'm sorry.  I'm not sure what she's
19 talking about.
20      THE COURT:  I'm not following you.  Slow town.  We've
21 got plenty of time.
22      MS. LINDSTROM:  OK.  The complaint alleges negligence.
23      THE COURT:  I remember.
24      MS. LINDSTROM:  Product disparagement and letter of
25 title goods and a Lanham Act claim.  We believe that the

1    complaint adequately addresses all four causes of action.  We
2    did not contain in the negligence cause of action any
3    allegations with respect to negligent misrepresentation.
4            THE COURT:  So what's the -- your claim is they were
5    negligent in doing what?
6            MS. LINDSTROM:  So our client is a --
7            THE COURT:  I got the facts.  What did they do
8    negligently?
9            MS. LINDSTROM:  They took a photograph or made some
10   representation, some representation from some source that we
11   have no information about.  And based on that information,
12   printed a catalog that had a photograph of my client's piece of
13   art in it and listed it for sale and had a completely under
14   valued estimate on it.  So it's our view that what they did was
15   completely negligent in printing, disseminating and even having
16   it up for sale the painting was never consigned.
17           THE COURT:  OK.  Again, I am struggling for what did
18   they do?  Is it your claim that he were negligent by accepting
19   a counterfeit piece of art for sale?  You are not saying they
20   negligently printed their catalog.  The catalog I am sure was
21   beautiful.  Sotheby's catalogs are always beautiful.
22           MS. LINDSTROM:  Actually, your Honor, yes, I am saying
23   that they negligently accepted for sale.
24           THE COURT:  They negligently accepted for sale a
25   counterfeit piece of art?

1              MS. LINDSTROM:  But that's not the only issue with
2     negligence.  By not doing their due diligence they acted
3     negligently in printing that catalog.  So the fact that they
4     created that catalog and printed and disseminated it around the
5     world is the negligence.
6              THE COURT:  And that breached what duty?
7              MS. LINDSTROM:  The duty is owed to the owner of the
8     work and --
9              THE COURT:  And that's just by virtue of the fact that
10    they're an auction house that sells fine art?
11             MS. LINDSTROM:  Yes.
12             THE COURT:  They owe a duty to every owner of fine art
13    worldwide?
14             MS. LINDSTROM:  If in they're printing a
15    representation of that work, absolutely.  It's our view that if
16    they make representations about individual pieces of art, they
17    have the duty to the owner of that art to make sure that it's
18    correct.  And it was incorrect in so far as offering it for
19    sale cause it wasn't for sale.  And it was also incorrect that
20    insofar as it being an extremely low estimate on it.
21             THE COURT:  Well, that I'm unmoved by that argument.
22    That's an estimate.  That's an opinion.  You are going to be
23    hard pressed to prevail on that.
24             And on the Lanham Act I presume that the theory is the
25    fault statement is Sotheby's represented that it had

1    Brushyelegy for sale when in fact you did not.
2             MS. LINDSTROM:  That is correct.
3             THE COURT:  That's your claim?
4             MS. LINDSTROM:  That is correct, your Honor.
5             THE COURT:  OK.  And your theory of damages is it
6    hasn't sold.
7             MS. LINDSTROM:  No, your Honor.  It's not currently
8    for sale.  But, your Honor, these paintings are affected by
9    experts' appraisals and estimates.  And our theory is that by
10   printing this in the catalog with such a grossly undervalued
11   estimate that it damaged the work and in the industry that's
12   commonly known as being burned.
13            THE COURT:  But here is my problem.  I get the whole
14   notion that it was burned, but the problem is counterfeit or
15   real, that's their estimate of what the pointing is worth.
16   Your client and their client have radically different views of
17   the value of work.  But if you think you're going to prevail
18   because they think the thing is worth a quality of a million
19   dollars and your client thinks it's worth $250,000 and you
20   think it's worth $650,000, that's not a statement of fact.
21            MS. LINDSTROM:  Your Honor, there's a $500,000 delta
22   and there's experts that an auction results in the past that
23   support a much higher estimate.  So when --
24            THE COURT:  So they were wrong but they didn't do that
25   intentionally.

1           MS. LINDSTROM:  Your Honor, I disagree.  There's a
2  reckless disregard.  They didn't even consider what the prior
3  sales were.  And they're so, there's such experts in this
4  industry that when they say something it's very highly
5  regarded.
6           THE COURT:  It's like E. F. Hutton, when E. F. Hutton
7  talks, people listen.  You're probably too young for that ad.
8  If Sotheby's says that's what it's worth a lot of people are
9  going to think that's what it's worth.
10          MS. LINDSTROM:  So it does cause damage in the
11 industry.  And this is a client who --
12          THE COURT:  I got it.  I got it.  All right.  I'm not
13 going to stay discovery.  I'm going to let it go forward but,
14 frankly, I think your case has a lot of problems.  I think your
15 case has a lot of problems.  This strikes me as a case that
16 might benefit from mediation.
17          MS. LINDSTROM:  Yes, your Honor, please.
18          THE COURT:  Are you interested in mediation.
19          MR. CAHILL:  Absolutely, of course.
20          THE COURT:  Would you like to go to the magistrate
21 judge or would you like to go to the mediation program.
22          MR. CAHILL:  We prefer the magistrate.
23          MS. LINDSTROM:  We prefer to the mediation program
24 please, your Honor.
25          THE COURT:  OK.  Talk about it with each other.  I'll

G6HAASEAC                       Conference

1    send you to either one.  I'm not going to send you to both.  So
2    you want mediation.
3             MS. LINDSTROM:  Yes.
4             THE COURT:  Does your guy have other art?
5             MS. LINDSTROM:  He's dead.
6             THE COURT:  Oh.
7             MS. LINDSTROM:  This was the crown jewels of his
8    collection.  He's a dealer and he, basically, instead of
9    investing in retirement funds he puts it into art and this was
10   basically his 401K, for lack of a better word.  So he'll come
11   and I think it's important for the clients to be there.  And I
12   think mediation would be most helpful because I think having
13   the process where the mediator goes in and out of the room, I
14   just think it would be an easier processor for my client.
15            MR. CAHILL:  I don't have a problem with that.  I've
16   experienced that with magistrate judges that do that.
17            THE COURT:  Me too.
18            MR. CAHILL:  We just think it's hard to find a
19   mediator in the mediation program who would, I just have had
20   better success with in 30 years with magistrate judges if
21   they're willing to do it.  I've seen more cases settle with
22   magistrate judges, not that I haven't settled with lawyers but
23   just generally the attachment of "judge" to your name is a
24   helpful factor.
25            THE COURT:  OK.  Well, I'm -- as I say, I'm agnostic.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Sometimes mediators are good at finding if there's something other than money that might make both people sort of happy but talk to each other.  Whatever you want just write me a letter saying that's what you want and I'll refer you to that.

          MR. CAHILL:  We have tried extensively and so it won't be our first attempt to try to resolve it.  It informs my desire for magistrate judge but I'm happy to talk about it.

          THE COURT:  OK.  Let me again tell both parties, I see difficulties in both of your cases.  In particular, I find difficulties with the plaintiff's theory that because Sotheby's valued the painting at 150,000 that now the painting has no value.  That seems incomprehensible to me.  I realize the art world is odd.  I have my 401K in a 401K.  But be that as it may, I think your client needs to be realistic about what his damages are if he gets any damages at all.

          OK.  So back to my normal routine.  You've proposed fact discovery to be complete on September 15th.  That's fine.  That seems more than enough time.  In fact, there seems to be very little that you actually need in discovery in this case.

          MS. LINDSTROM:  Yes, your Honor.

          THE COURT:  Meet, plan, schedule.  Don't come to me on September the 12th and tell me that you can't finish discovery because of the Jewish holiday because of Labor Day, because people are out of town.  All of those things can be planned for in advance short of someone being in the hospital unexpectedly,

G6HAASEAC                      Conference

1   that's your deadline, OK?
2           MS. LINDSTROM:  Yes, your Honor.
3           THE COURT:  Expert discovery is October 31.  Seems
4   likely you are going to need expert discovery if can't settle
5   the case.  So, I am going to see you again on September 23 at
6   ten o'clock.  That will be after the close of your fact
7   discovery unless the case goes away on motion.
8           OK.  Anything further?
9           MR. SHEPS:  No, your Honor.
10          THE COURT:  Thank you, all.
11                          (Adjourned)
12
13
14
15
16
17
18
19
20
21
22
23
24
25